WAKING *v.* CINCINNATI, INDIANAPOLIS AND WESTERN RAILROAD COMPANY.

[No. 10,114.   Filed January 30, 1920.]

1. RAILROADS.—*Crossing Accidents.*—*Notice of Danger.*—*Contributory Negligence.*—Railroad crossings are, in themselves, a warning of danger, and a traveler approaching such a crossing, who fails to exercise reasonable care for his own protection and is injured, is guilty of contributory negligence. p. 406.

2. RAILROADS.—*Crossing Accidents.*—*Care Required on Approaching Crossing.*—*Contributory Negligence.*—*Presumption.*—A traveler upon a public highway, in attempting to pass over a railroad crossing, must look and listen attentively for the approach of trains, and, if by the exercise of reasonable care, he could have seen the approach of a train by looking in time to have avoided injury by reasonable effort, it will be presumed, if he is injured, that he either did not look, or, if he did look, that he did not heed what he saw. p. 407.

3. RAILROADS.—*Crossing Accidents.—Duty to Look and Listen on Approaching a Crossing.*—Mental absorption or reverie induced by business, grief, or other causes, will not excuse a traveler on a public highway from his duty to look and listen when approaching a railroad crossing. p. 408.

4. RAILROADS.—*Crossing Accidents.—Duty to Look and Listen on Approaching a Crossing.*—Although the exercise of reasonable care by a traveler on a public highway about to enter upon a railroad crossing does not require him to look and listen at any precise distance from the crossing, it does require him to exercise reasonable care to select a place where such acts will be reasonably effective. p. 408.

5. RAILROADS.—*Crossing      Accidents.—Negligence.—Violation      of Statute.—Right to Assume Obedience to Law.—Contributory Negligence.*—Although the failure of a railroad company to perform a statutory duty in the operation of a train as it approaches a public highway crossing is negligence *per se*, such negligence will not relieve a traveler on the highway about to enter on the crossing from the duty of looking and listening, and this rule prevails, though the traveler has a right, within reasonable limits, to assume that the railroad company will obey the law in operating its train. p. 408.

6. TRIAL.—*General Verdict for Plaintiff.—Scope and Effect.*—A general verdict for the plaintiff is a finding that all the material allegations of the complaint are true. p. 408.

7. RAILROADS.—*Crossing Accidents.—Collision with Automobile.— Contributory Negligence.—Failure to Look for Trains.*—In an action for the death of an automobile driver in a crossing accident, decedent *held* guilty of negligence contributing proximately to his injury in that he failed to look for approaching trains. p. 409.

8. TRIAL.—*Verdict.—Answers to Interrogatories.—Construction.*— An unreasonable construction cannot be placed on an interrogatory in determining whether the answers to interrogatories are in irreconcilable conflict with the general verdict. p. 410.

9. EVIDENCE.—*Judicial Notice.—Means Employed to Stop an Automobile.*—The court knows, as a matter of common knowledge, that the application of the brakes or shutting off the power are the usual means employed to stop an automobile. p. 410.

10. RAILROADS.—*Crossing Accidents.—Collision with Automobile.— Duty of Driver.*—If the application of the brakes or the shutting off of the power from the automobile in which decedent attempted to cross over a railroad crossing would have been effective to avoid injury from an approaching train, and only reasonable promptness on the part of decedent was required to make such

acts available for such purpose, it was his duty under the law to make use of them.  p. 410.

11.  TRIAL.—*Verdict.—Interrogatories.—Construction as a Whole.*— It is not necessary, in order that the interrogatories may overturn a general verdict, that all facts with reference to a particular subject should be disclosed by a single interrogatory, but the several interrogatories and answers thereto may supplement each other, and must be construed as a whole.  p. 411.

12.  TRIAL.—*Verdict.—Interrogatories.—Irreconcilable Conflict.*— Answers to interrogatories will control the general verdict only when the conflict on the face of the record is such as to be beyond the possibility of being removed by any evidence admissible under the issues.  p. 411.

From Union Circuit Court; *Raymond S. Springer,* Judge.

Action by Mattie Waking, administratrix of the estate of William Waking, deceased, against the Cincinnati and Western Railroad Company.  From a judgment for defendant, the plaintiff appeals.  *Affirmed.*

*Walter F. Bossert* and *Robbins, Reller & Robbins,* for appellant.

*George W. Pigman, J. W. Fesler, Harvey J. Elam,* and *Howard S. Young,* for appellee.

BATMAN, J.—This is an action by appellant against appellee to recover damages on account of the death of William Waking, alleged to have been caused by the negligence of appellee.  The complaint is in two paragraphs, and alleges in substance, among other things, that appellee's railroad extends through the town of Liberty in Union county, Indiana, in a north and south direction, and crosses High street therein at practically right angles; that said railroad, where it crosses said street, consists of three tracks about five feet apart, running parallel, one of which is used

as a main track, and the other two as sidetracks; that a high brick factory building stands at the northwest corner of the intersection of the street and tracks; that the east side of said building is closely adjacent to appellee's west sidetrack, and extends along the same for a long distance; that the south side of said building is on a line with the sidewalk on the north side of said street, and extends west from said west sidetrack a distance of more than 200 feet; that on November 6, 1916, appellee had placed a large flat-bottom freight car, loaded with gravel, on said west sidetrack, so that it extended across the north sidewalk of said street; that said factory building and said loaded car formed an obstruction, which prevented a person, approaching said crossing from the west, from getting a clear and unobstructed view to the north along said railroad tracks without going onto the same; that a high board fence, inclosing a stockyard, is located at the southwest corner of the intersection of said street and tracks; that said fence along the east side of the stockyard is closely adjacent to appellee's west sidetrack, and extends along the same for a long distance; that the fence along the north side of the stockyard is built on a line with the sidewalk on the south side of said street, and extends west from said west sidetrack a distance of more than 100 feet; that on said day appellee permitted a number of large freight cars to stand on said west sidetrack to the south of the crossing, which cars, together with said fence, prevented a person, approaching the crossing from the west, from getting a clear and unobstructed view to the south along the railroad tracks without going onto the same; that appellee at all times had knowledge of the existence and character of said obstructions; that on the after-

noon of said day said William Waking, while seated in an automobile, drove the same west along said street and over said crossing; that in so doing he exercised due care and caution by looking and listening for the approach of a train, but neither saw nor heard any; that after driving over the crossing he proceeded to a point about fifty feet west thereof, where he turned the automobile toward the east, and again approached the crossing with due care and caution, at all times looking and listening for approaching trains, but neither saw nor heard any; that while he was in the act of crossing said railroad track in a lawful, careful and cautious manner, appellee operated one of its trains from the north at a high and dangerous rate of speed, without giving any warning of its approach by whistle or bell or otherwise, and struck said automobile, thereby hurling said William Waking a great distance, and inflicting upon him serious injuries from which he died; that said decedent, by reason of said obstructions, was unable to see, and did not see said train as it approached said crossing, and by reason of appellee's negligence in failing to sound the whistle and ring the bell of the engine attached to the train, he was unable to hear, and did not hear the same approach said crossing; that the decedent was wholly free from fault, and received his injuries as the direct and proximate result of appellee's negligence.

The complaint was answered by a general denial. On the issues thus formed the cause was submitted to a jury for trial, resulting in a verdict in favor of appellant for $2,000. The jury also returned its answers to certain interrogatories submitted by the court, by which the following facts were found: Appellant's decedent was killed on November 6, 1916,

in the town of Liberty, at the point where High street intersects the main track of appellee, while driving a Ford automobile. At the place where the accident happened High street runs east and west and the railroad tracks run north and south. At the time the decedent met his death he was traveling east on said street. As he approached the track on which he was killed, he first crossed two sidetracks of appellee, the one immediately west of the one on which he was killed being unobstructed. As the decedent approached the track on which he was killed, he could have seen the train which struck him, by looking with ordinary care, at any point during the last twenty feet he traveled before reaching said track. After he could have discovered the train by looking north, he could have stopped his automobile in a place of safety, by acting with reasonable promptness in applying the brakes and cutting off power. There was nothing to prevent the decedent from looking to the north, in the exercise of reasonable care, in approaching the crossing during the last twenty feet of his travel, and in time to have stopped. Appellee filed a motion for judgment on the answers to the interrogatories, notwithstanding the general verdict, and appellant filed a motion for judgment on the general verdict. The latter motion was overruled and the former motion was sustained. The court thereupon rendered judgment in favor of appellee, from which appellant prosecutes this appeal, and has assigned the rulings of the court stated above as the errors on which he relies for reversal.

In this appeal we are only required to determine a single question, viz., Are the answers to the interrogatories in irreconcilable conflict with the general verdict? As these answers only relate to the negligence of appellant's decedent, at the time

he met his death, we are only required to consider whether they show such a state of facts in that regard as to require us to say, as a matter of law, that appellant is not entitled to recover, notwithstanding the general verdict in her favor. As preliminary to a consideration of this question, it would be well to note some of the well-established rules, relating to the duties resting upon a traveler upon a public highway about to enter upon a railroad crossing, with reference to his own protection. Among such rules we find the following: Railroad crossings are, in themselves, a warning of danger, and all persons approaching the same must exercise reasonable care for their own protection, and if they fail to do so, and are thereby injured, they will be deemed guilty of contributory negligence. *Oleson* v. *Lake Shore, etc., R. Co.* (1896), 143 Ind. 405, 42 N. E. 736, 32 L. R. A. 149; *Lake Shore, etc., R. Co.* v. *Graham* (1904), 162 Ind. 374, 70 N. E. 484; *Ackerman* v. *Pere Marquette R. Co.* (1915), 58 Ind. App. 212, 108 N. E. 144. Travelers upon a public highway, in attempting to pass over railroad crossings, must look and listen attentively for the approach of trains. If such a traveler, by the exercise of reasonable care, could have seen the approach of a train by looking in time to have avoided injury, by the use of reasonable efforts, it will be presumed, in case he is injured by a collision therewith, that he either did not look, or, if he did look, that he did not heed what he saw. *Mann* v. *Belt R. etc., Co.* (1891), 128 Ind. 138, 26 N. E. 819; *Pittsburgh, etc., R. Co.* v. *Fraze* (1898), 150 Ind. 576, 50 N. E. 576, 65 Am. St. 377; *Morford* v. *Chicago, etc., R. Co.* (1902), 158 Ind. 494, 63 N. E. 857; *Wabash R. Co.* v. *Keister* (1904), 163 Ind. 609, 67 N. E. 521; *Cleveland, etc., R. Co.* v. *Starks* (1915), 58 Ind. App.

341, 106 N. E. 646. Mental absorption, or reverie, induced by business, grief, or other causes, will

3. not excuse such traveler from his duty to look and listen. *Oleson* v. *Lake Shore, etc., R. Co., supra; Mann* v. *Belt R., etc., Co., supra.* While

4. the exercise of reasonable care, on the part of a traveler on a public highway about to enter upon a railroad crossing, does not require him to look and listen at any precise distance from the crossing, it does require him to exercise reasonable care to select a place where such acts will be reasonably effective. *Pittsburgh, etc., R. Co.* v. *Dove* (1916), 184 Ind. 447, 111 N. E. 609; *Fort Wayne, etc., Traction Co.* v. *Schoeff* (1914), 56 Ind. App. 540, 105 N. E. 924. While the failure of a railroad company to perform a statutory duty in the operation of a

5. train as it approaches a public highway crossing is negligence *per se,* such negligence will not relieve a traveler on such highway about to enter upon such crossing from the duty of looking and listening to ascertain for himself whether or not a train is approaching. *Rich* v. *Evansville, etc., R. Co.* (1903), 31 Ind. App. 10, 66 N. E. 1028; *Pittsburgh, etc., R. Co.* v. *West* (1904), 34 Ind. App. 95, 69 N. E. 1017; *Oleson* v. *Lake Shore, etc., R. Co., supra.* This is true, although such traveler has a right, within reasonable limits, to assume that the railroad company will obey the law in approaching such crossing with one of its trains. *Baker* v. *Baltimore, etc., R. Co.* (1916), 61 Ind. App. 454, 112 N. E. 27, and cases there cited.

When we accept the general verdict as a finding, that all the material allegations of the complaint are true, as we are required to do, and consider

6. such allegations in connection with the answers

to the interrogatories, we are confronted with the following state of facts: Appellant's decedent crossed appellee's three railroad tracks going west on High street in an automobile. After going to a point about fifty feet west of the same, he turned the automobile toward the east and attempted to recross said tracks. These tracks of themselves served as a warning to him of the presence of danger. The obstruction on each side of the street, at the point where he turned, and from such point east toward the tracks, were of such a character that, had he exercised reasonable care, he would not have failed to observe that his view of such tracks and the approach of trains thereon was obstructed thereby. This fact, of which he must be held to have had knowledge, increased the danger in recrossing said tracks, and imposed on him the duty of exercising increased vigilance. As he crossed the first track going east, his view toward both the north and south was cut off by freight cars standing thereon. His view along the second track, being the one which he crossed immediately before he was injured, was unobstructed. By reason of this fact, he could have seen the train which struck him, by looking with ordinary care toward the north, when at any point within twenty feet of the place he was injured. He could have stopped his automobile in a place of safety, by acting with reasonable promptness in applying the brakes and cutting off power, after he could have discovered the train by looking north. There was nothing to prevent him from looking north, in the exercise of reasonable care in approaching the crossing, during the last twenty feet of his travel, and in time to have stopped. He did not stop, but drove on the third track, and was killed. These facts, when viewed in the light of the

well-established rules cited above, force us to conclude that the decedent was guilty of negligence, which contributed proximately to his injury, and that the trial court therefore did not err in sustaining appellee's motion for judgment on the answers to the interrogatories.

Appellant, in her effort to avoid this conclusion, has made a number of contentions, which we cannot sustain. It is suggested that the use of the words "any point" in the interrogatory with reference to the distance in which the decedent could have seen the train which struck him, by looking with ordinary care, may have led the jury to believe that inquiry was being made as to whether the decedent could have seen such train at "a point or some point" within such distance. To adopt such view, in the light of other facts found by the answers to other interrogatories, would require us to place an unreasonable construction on the interrogatory in which such words appear, which we are not permitted to do. *Sare* v. *Hoadley Stone Co.* (1914), 57 Ind. App. 464, 105 N. E. 582.

Again it is suggested that, under the facts found, the law did not arbitrarily require that the decedent apply the brakes, and shut off the power, nor that he do either of such acts, nor that he stop the automobile at all. We know, as a matter of common knowledge, that such acts are the usual means employed to stop an automobile. If such acts would have been effective to avoid injury, and only *reasonable promptness* was required to render them available for such purpose, it was the decedent's duty, under the law, to make use of the same. The facts found by the jury render appellant's suggestion unavailing.

Appellant also suggests that the interrogatory and answer by which it is found that there was nothing to prevent the decedent from looking to the north, in the exercise of reasonable care in approaching the crossing, during the last twenty feet of his travel, and in time to stop, does not state whether he could have seen the train by so looking, or where, or by what means he could have stopped. It is not necessary, in order that the interrogatories may overturn a general verdict, that all facts with reference to any particular subject should be disclosed by a single interrogatory, but the several interrogatories and answers may supplement each other, and must be reasonably construed as a whole. When the interrogatories and answers before us are so considered and construed, they clearly show that, had the decedent used reasonable care in looking toward the north at the time indicated by the interrogatory in question, he could have seen the train in time to have stopped the automobile in a place of safety, by the reasonable use of the means ordinarily employed for such purpose. This suggestion is likewise unavailing.

11.

Under the rule that answers to interrogatories will control the general verdict only when the conflict on the face of the record is such as to be beyond the possibility of being removed by any evidence admissible under the issues, appellant has cited a number of facts, which she claims might have been proved in support of the general verdict. Substantially all of these possible facts bear on the question of the decedent's conduct in crossing and attempting to recross appellee's tracks, and, in a measure, tend to show a state of circumstances that might have so far deceived or misled the decedent

12.

as to have had the effect of preventing him from exercising due care for his own safety by looking north before he drove upon the track where he was injured. These possible circumstances, however, are met by the finding of the jury that there was nothing to prevent him from exercising such care, and that, if he had done so, he would have avoided injury.

After careful consideration of all the contentions advanced by appellant, we are still of the opinion that the court did not err in sustaining appellee's motion for judgment on the answers to the interrogatories, notwithstanding the general verdict. Judgment affirmed.